UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CORNELIUS DOLLY,                          )
                                          )
          PLAINTIFF,                      )
                                          )
v.                                        )
                                          )   CIVIL ACTION NO.:  **3:14CV543**
CB SQUARED SERVICES, INC. D/B/A           )
JIFFY LUBE                                )
                                          )
          DEFENDANT.                      )

## COMPLAINT

Comes now the Plaintiff, Cornelius Dolly ("Mr. Dolly" or "Plaintiff"), by counsel, and complains of CB Squared Services, Inc. d/b/a Jiffy Lube ("CB Squared" or "Defendant"), as follows:

### NATURE OF CLAIMS

1.     This Complaint arises out of CB Squared's refusal to accommodate and refusal to hire Mr. Dolly, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (hereinafter the "ADA").

2.     Plaintiff seeks declaratory judgment, injunctive relief, back pay, benefits, compensatory damages, front pay and/or reinstatement and punitive damages for ADA violations and attorney's fees.

### JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

3.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. § 12117(a).

4.     This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. 1391(b)(1) and (b)(2).  The actions complained of took place in this judicial district; evidence

and employment records relevant to the allegations are maintained in this judicial district; Mr. Dolly would be employed in this judicial district but for the unlawful actions and practices of CB Squared; and CB Squared is present and regularly conducts affairs in this judicial district.

5.     Plaintiff filed a timely charge alleging discrimination on the basis of disability with the United States Equal Employment Opportunity Commission (EEOC) on or about October 7, 2013. Plaintiff timely re-filed this same charge with the EEOC, still in a timely manner, on or about July 2, 2014.  Thereafter, the EEOC issued a Notice of Right to Sue on July 3, 2014.

6.     Plaintiff initiated this action within 90 days of the date of the receipt of the Right-to-Sue letter.

<u>**Parties**</u>

7.     The Plaintiff, Mr. Dolly, is a U.S. citizen and resident of Richmond, Virginia.  At all times relevant to the matters alleged herein, Mr. Dolly was an employee within the meaning of the ADA pursuant to 42 U.S.C. § 12111(4).

8.     The Defendant, CB Squared, is, and at all relevant times was, a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal office and corporate headquarters located in Falmouth, Virginia.  At all times pertinent hereto, CB Squared was, is, and has been an "employer" within the meaning of 42 U.S.C. § 12111(5)(A) and is subject to the provisions of the ADA.

9.     At all times relevant to the matters alleged herein, Defendant's agents and employees were acting during the course and within the scope of their employment or agency and with the knowledge and consent of the Defendant.

**Factual Allegations**

10.     Mr. Dolly was diagnosed with epilepsy in 2008.  As a result of his epilepsy, Mr. Dolly experiences complex partial seizures.

11.     Mr. Dolly's epilepsy substantially limits his neurological function.

12.     At the start of a complex partial seizure, Ms. Dolly feels as though he is experiencing déjà vu.  When he feels this aura, he locates a safe place to sit down or remains seated.  During seizures, which may last for a minute or two, Mr. Dolly stares off into space and may drool.  Mr. Dolly does not experience well-publicized seizure symptoms such as falling over, shaking, or writhing; rather, his seizures render him effectively paralyzed and he is unable to communicate

13.     Mr. Dolly's epilepsy constitutes a disability for purposes of the Americans with Disabilities Act, as amended.  Additionally, Mr. Dolly has a record of this impairment and/or Defendant regarded him as having this impairment.

14.     Mr. Dolly began working as a lube technician at Lubrication Centers, Inc. d/b/a Jiffy Lube ("Lubrication Centers") in Mechanicsville, Virginia, in May of 2012.

15.     Toward the end of September 2013, Mr. Dolly learned that the Lubrication Centers' Mechanicsville Turnpike location had been sold to CB Squared.  Mr. Dolly and his co-workers learned in a meeting that they were terminated, but they were told they would be re-hired once they completed applications.

16.     Within a few minutes of learning that he had been terminated, Mr. Dolly filled out an application.

17.     Mr. Dolly noted in this job application that he did not have a drivers' license because of his epilepsy; thus, CB Squared was aware of Mr. Dolly's disability.

3

18.     A few minutes after Mr. Dolly and his co-workers turned in their job applications, representatives of CB Squared began to explain the benefits of working with CB Squared, introduced management, and told Mr. Dolly and his co-workers what would be expected of them as employees of CB Squared.

19.     During this introductory meeting, the President of Lubrication Centers, Richard D. Heacock, Jr., called Mr. Dolly outside and personally introduced him to the President and COO of CB Squared, C. Michael Day.  Mr. Day advised Mr. Dolly that he would hire Mr. Dolly and would provide him with a raise of $1.00 per hour.

20.     On Tuesday, October 1, Babu Brar, CB Squared's Vice President, told Mr. Dolly that he could not return to his position because he did not have a driver's license.

21.     On Thursday, October 3, another representative of CB Squared told Mr. Dolly that he could return to his job, but that he would be required to attend a training course at another location, in Fredericksburg.

22.     On Friday, October 4, 2013, Mr. Dolly received a call from a CB Squared District Manager.  That District Manager told Mr. Dolly that the former employees at his Jiffy Lube location were to go to Fredericksburg to learn air conditioning and windshield repair.  The District Manager said that there was no need for Mr. Dolly to go to training in Fredericksburg because it would not be safe for him to perform air conditioning repair, because he would have to climb a ladder.  The District Manager told Mr. Dolly that he could not return to his position.

23.     As of Friday, October 4, 2013, Mr. Dolly was not prohibited from climbing ladders and Mr. Dolly had not spoken with any agent or employee of CB Squared about his present or prior ability to climb a ladder.

4

24.    Also on October 4, 2013, Mr. Dolly had a meeting with Mr. Day and Babu Brar. During that meeting, Mr. Brar told Mr. Dolly that he was required to present a doctor's note indicating what he could and could not do.

25.    Later that afternoon, Mr. Brar told Mr. Dolly that if he could present a doctor's note stating he was seizure free and if there was still a job opening, then he could have a job.

26.    Mr. Dolly could not obtain a note from his doctor that stated he was seizure free, as he had experienced a seizure the month prior.

27.    Later on October 4, 2013, Mr. Dolly submitted documents from his doctor to CB Squared. Mr. Dolly personally delivered these documents to CB Squared. The documents stated Mr. Dolly's only restriction: he could not drive.

28.    CB Squared did not accommodate Mr. Dolly's disability.

29.    CB Squared did not hire Mr. Dolly.

30.    After CB Squared terminated, refused to accommodate, and refused to re-hire Mr. Dolly, he learned that air conditioning repair would not require him to climb a ladder.

31.    The ability to climb a ladder was not an essential function of the position Mr. Dolly sought.

32.    After CB Squared terminated, refused to accommodate, and refused to re-hire Mr. Dolly, he learned that CB Squared did not allow its non-managerial employees to operate customer vehicles.

33.    The ability to drive was not an essential function of the position Mr. Dolly sought.

34.    Mr. Dolly's job duties did not require him to be seizure free.

35.    Being seizure free was not an essential function of the position Mr. Dolly sought.

5

36.     After CB Squared terminated, refused to accommodate, and refused to re-hire Mr. Dolly, CB Squared continued to advertise that positions were available and even offered to train new employees locally, rather than in Fredericksburg.

37.     Defendant's refusal to accommodate and refusal to re-hire Plaintiff were undertaken in willful, blatant and intentional disregard of, and in violation of, Plaintiff's rights under the ADA.

COUNT I:
AMERICANS WITH DISABILITIES ACT:
FAILURE TO ACCOMMODATE

38.     The foregoing allegations are incorporated as if re-alleged herein.

39.     Plaintiff is a qualified individual with a disability under the meaning of the ADA, and/or Mr. Dolly had a record of a disability under the ADA, and/or Defendant regarded him as having a disability.

40.     On the job application Mr. Dolly completed for CB Squared, Mr. Dolly noted that he did not have a driver's license because he had epilepsy.

41.     CB Squared, which was covered by the ADA, had notice of Mr. Dolly's disability.

42.     With reasonable accommodation, Mr. Dolly could have performed the essential functions of the position in which CB Squared indicated it would employ him.

43.     CB Squared refused to accommodate Mr. Dolly and instead elected not to hire him.

44.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered, continues to suffer, and will in the future suffer injury and damages, including embarrassment,

6

inconvenience, humiliation, severe mental anguish, pain, suffering, loss of income, litigation expense including attorneys' fees, medical expense, consequential damages and other injury.

COUNT II:
AMERICANS WITH DISABILITIES ACT
REFUSAL TO HIRE

45.     The foregoing allegations are incorporated as if re-alleged herein.

46.     Plaintiff is a qualified individual with a disability under the meaning of the ADA, and/or Mr. Dolly had a record of a disability under the ADA, and/or Defendant regarded him as having a disability.

47.     Toward the end of September, 2013, Mr. Dolly informed CB Squared that he had epilepsy.

48.     Mr. Dolly applied for a position with CB Squared and was qualified for the position to which he applied.

49.     Within days of learning of Mr. Dolly's epilepsy, CB Squared refused to hire Mr. Dolly into his previous position, as it had promised.

50.     CB Squared refused to hire Mr. Dolly because of his disability.

51.     After CB Squared refused to hire Mr. Dolly, the position remained open and it continued to seek applicants.

52.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered, continues to suffer, and will in the future suffer injury and damages, including embarrassment, inconvenience, humiliation, severe mental anguish, pain, suffering, loss of income, litigation expense including attorneys' fees, medical expense, consequential damages and other injury.

WHEREFORE, Mr. Dolly demands that judgment be entered in his favor and against the Defendant on the above-stated counts, and on each of them as described above, and that in addition this Court issue an Order:

(i)      Declaring that the acts and practices complained of herein are in violation of the Plaintiff's rights as secured by the Americans with Disabilities Act, U.S.C. §12101 *et seq.*;

(ii)     Requiring and issuing a mandatory injunction directing the Defendant to reinstate the Plaintiff to a position of equal duties and responsibilities as the Plaintiff would have received but for the Defendant's conduct, with equal pay and benefits (retroactive to October 1, 2013), or in the alternative for an award of judgment for front pay and benefits under the ADA;

(iii)    Awarding Plaintiff back pay for violations of the ADA;

(iv)     Awarding Plaintiff compensatory damages in the amount of $300,000;

(v)      Awarding Plaintiff punitive damages in the amount of $300,000;

(vi)     Awarding Plaintiff an amount sufficient to offset any adverse tax consequences resulting from a lump sum award or an award of other relief in this action because he was required to file suit to enforce his federally protected rights;

(vii)    Awarding Plaintiff other appropriate injunctive relief;

(viii)   Awarding Plaintiff incidental and consequential damages, actual attorney's fees and costs of this action, including expert witness fees; and in addition,

(ix)     Awarding Plaintiff such other and further relief as may be appropriate under the circumstances.


**TRIAL BY JURY IS REQUESTED.**

CORNELIUS DOLLY

8

Blackwell N. Shelley, Jr. (VSB 28142)
Tim Schulte (VSB 41881)
Lauren E. Fisher (VSB 80360)
Shelley Cupp Schulte, P.C.
2020 Monument Avenue
Richmond, Virginia 23220
(804) 644-9700
(804) 278-9634 [fax]
Email: shelley@scs-work.com
Email: schulte@ scs-work.com
Email: fisher@scs-work.com

*Counsel for Plaintiff*